Theodore Christian Sieving
(*Pro Hac Vice* Admission Pending)
California Bar No. 270827
XNOVO LEGAL, P.C.
235 E Broadway #800
Long Beach, CA 90802
(734) 730-6831
ted@xnovo.legal

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JARED POLITES, an individual<br><br>                              Plaintiff,<br><br>vs.<br><br>ALCHEMY FINANCE, INC., a Delaware Corporation; ALCHEMY COMPANY, LIMITED, a Hong Kong private limited company; ALCHEMYCOIN TECHNOLOGY, LIMITED, a Hong Kong private limited company; SHENG-WENG CHENG, an individual; CHEN-HSING FAN, an individual; and Does 1-20,<br><br>                              Defendants. | Case No:  1:19-cv-03862<br><br>Hon. Gregory H. Woods<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jared Polites ("Mr. Polites"), through undersigned counsel, files this Complaint and brings this action against Defendants Alchemy Finance, Inc., Alchemy Company, Limited and AlchemyCoin Technology Limited, Sheng-Weng Cheng, and Chen-Hsing Fan for breach of contract, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, unjust enrichment, breach of the implied duty of good faith and fair dealing, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy and civil aiding and abetting. In support of his Complaint based on his own knowledge and otherwise on information and belief, Mr. Polites states as follows:

1

**PRELIMINARY STATEMENT**

1.    Mr. Polites brings this action against Alchemy Finance, Inc., dba Alchemy Lending ("Alchemy Lending"), and its affiliated offshore Hong Kong entities, Alchemy Company Limited and AlchemyCoin Technology Limited (collectively, "Alchemy Entity Defendants") along with control persons of Alchemy, Defendant Sheng-Weng Cheng ("Cheng") and  Defendant Chen-Hsing Fan ("Fan") (collectively, the "Individual Defendants"). Alchemy Entity Defendants and Individual Defendants shall be collectively hereinafter referred as "Alchemy" or "Defendants".

2.    From February 2018 to October 2018, Mr. Polites provided certain blockchain marketing and public relations ("PR") services to Defendants in connection with their blockchain project and related Initial Coin Offering ("ICO"). An ICO is an online crowdfunding method through which companies use blockchain/distributed ledger technology to create, offer, and sell for venture fundraising purposes their own cryptocurrency or "tokens" – cryptographically-secured digital assets that can serve as a medium of exchange akin to fiat currency (e.g. Bitcoin) or otherwise serve as a digital representation of some other traditional asset class, such as stocks or commodities.

3.    Defendants agreed in writing to compensate Mr. Polites one percent (1%) of all funds raised from their ICO in exchange for Mr. Polites' blockchain marketing, PR services, and expertise, pursuant to a certain advisory agreement executed by Mr. Polites and Defendant Cheng on behalf of Alchemy Lending.

4.    During the course of Mr. Polites' performance of his obligations under the Advisory Agreement, Alchemy publicly offered and sold their own cryptocurrency ("Alchemy Coin Tokens") as an investment for purposes of raising capital from external investors in the U.S.

5.    Individual Defendants formed various offshore entities in Hong Kong, which Individual Defendants used to conduct their ICO in an overt attempt to shield themselves of liability and circumvent various U.S. regulations. Forming offshore entities is a popular method for companies securing funds via an ICO to immunize themselves from legal liability, especially in light of

regulatory uncertainty in the U.S. regarding treatment of ICOs under various bodies of law, including without limitation federal and state securities, tax, and banking laws.

6. Alchemy purportedly closed at least $30 million USD in funding in connection with the offer and sale of the Alchemy Coin Tokens.

7. Defendants ultimately leveraged the initial $30 million USD closed to raise a purported total of $46.2 million USD as a result of their ICO (according to Defendant Cheng's public representations). This leveraging was accomplished through Defendants' participation in certain "token swap" agreements that artificially inflated the pecuniary value of the Alchemy Coin Tokens.

8. During the course of Mr. Polites's performance of the Advisory Agreement, Mr. Polites learned of Defendant Cheng's participation in various unlawful activities in connection with Alchemy's business, including U.S. tax evasion and immigration fraud, among others.

9. Defendants have refused, and continue to refuse, to satisfy their obligation to pay Mr. Polites for the services that Mr. Polites provided under the Advisory Agreement, despite Mr. Polites' frequent demands for payment and openness to reasonable settlement terms.

10. Defendants have habitually entered into, and breached in bad faith, various written agreements with third parties in which Defendants accepted services or funds (or both) from such third parties, while subsequently refusing to satisfy any of Defendants' promises made to such third parties.

11. As a result of Defendants' pattern of wrongful conduct, Mr. Polites seeks damages in an amount of $462,000, including attorneys' fees and costs, along with any other relief that this Court deems equitable and appropriate.

**PARTIES**

12.   Mr. Polites is a natural person who resides in Henderson, Nevada. Mr. Polites is a citizen of Nevada. Mr. Polites is a well-known blockchain marketing and PR advisor. Mr. Polites is also a former FBI analyst.

13.   On information and belief, Alchemy Finance, Inc., dba Alchemy Lending, is a Delaware corporation with a principal place of business in New York, New York and a purported registered office in State College, Pennsylvania. Alchemy Lending operates an unlicensed, unregistered, and unregulated online peer-to-peer lending platform that allows U.S. residents to either obtain consumer loans or provide financing to consumer debtors as an "investment."

14.   On information and belief, Defendant Alchemy Company, Limited is a Hong Kong private limited company with a principal place of business in New York, New York. Alchemy Company, Limited was formed as a vehicle to conduct the Alchemy Coin Token sale and collect proceeds therefrom.

15.   On information and belief, Defendant AlchemyCoin Technology Limited is a Hong Kong private limited company with a principal place of business in New York, New York. On information and belief, AlchemyCoin Technology Limited was formed to develop the blockchain technology supporting the Alchemy Coin Tokens and ultimately hold, market and sell Alchemy Coin Tokens for fundraising purposes.

16.   On information and belief, Defendant Sheng-Weng Cheng (aka Justin Jung, Justin Chang, Justin Cheng) is a natural person and a citizen of South Korea. Defendant Cheng resides in New York, New York. Defendant Cheng is a control person of all Alchemy Entity Defendants. Defendant Cheng is signatory to the Advisory Agreement. On information and belief, Defendant Cheng holds three different passports, in three different countries, under three different names. On information and belief, Defendant Cheng holds an F1 student visa but is no longer enrolled in any U.S. university or other qualifying higher educational institute. In addition, Defendant Cheng is currently the subject of FBI scrutiny for undisclosed allegations of unlawful activities.

17.    On information and belief, Defendant Chen-Hsing Fan (aka James Fan) is a natural person and a citizen of Taiwan. Defendant Fan currently resides in Taiwan. Defendant Fan is a control person of the Alchemy Entity Defendants.

18.    The true names and capacities of the Defendants named herein as Does 1 through 20, inclusive, whether individual, corporate, associate or otherwise, are unknown to Mr. Polites who therefore sues such Defendants by unknown names. On information and belief, Doe Defendants are individuals or entities over whom this Court has jurisdiction. Mr. Polites will amend this Complaint to show the true names, identities and capacities of Doe Defendants when ascertained. Mr. Polites alleges that Defendants sued as Does 1 through 20, and each of them, are liable in whole or in part for the wrongful acts alleged herein.

19.    Each Alchemy Entity Defendant was, and continues to be, a mere sham and organized and operated as the alter ego of the remaining Defendants for their personal benefit and advantage, in that all Defendants have at all relevant times mentioned herein exercised absolute dominion and control over each Alchemy Entity Defendant. Individual Defendants were the first and, on information and belief, only directors of the Alchemy Entity Defendants. Individual Defendants own or control all of the stock of Alchemy Entity Defendants. All Defendants have so intermingled their personal and financial affairs that Alchemy Entity Defendants were, and are, the alter ego of the remaining Defendants.

20.    At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified or authorized (or both) the wrongful acts of each of the Defendants.

21.    In committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of the improper acts that are the subject of this Complaint.

22.    Each Defendant aided and abetted, and rendered substantial assistance in, the wrongs enumerated in this Complaint. In taking such actions to substantially assist the commission of the

wrongdoing, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his, her or its overall contribution to and furtherance of the wrongdoing.

## JURISDICTION

23.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Parties are of diverse citizenship and the amount in question exceeds $75,000, exclusive of interest and costs.

24.   This Court also has subject matter jurisdiction over this action pursuant to 18 U.S.C.A. § 1964.

25.   This Court further has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

26.   This Court has specific jurisdiction over Defendants because all Defendants have sufficient minimum contacts with the forum district in a manner that pertains specifically to the activities and transactions at issue in this action.

## VENUE

27.   Venue is proper in this district under 28 U.S.C. § 1391 because Alchemy Entity Defendant Alchemy Lending and Individual Defendant Cheng reside in this District and Plaintiff resided in this district at the time of the transactions at issue.

28.   Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to Defendants' liability occurred in this District.

29.   Venue is further proper in this judicial district pursuant to 18 U.S.C.A. § 1965.

## FACTS

30.   Defendants sought to raise capital by launching an Initial Coin Offering ("ICO") to fund development of www.alchemylending.com - their unlicensed, unregistered, and unregulated online consumer lending and investment platform, Alchemy Lending. As previously stated above, an ICO is an online crowdfunding method through which companies use blockchain/distributed ledger technology to create, offer, and sell their own cryptocurrency or "tokens" –

cryptographically-secured digital assets that can serve as a medium of exchange akin to fiat currency (e.g. Bitcoin) or otherwise serve as a digital representation of some other traditional asset class, such as stocks or commodities. ICO's rising popularity as a fundraising method, combined with a lack of regulation, has led to a material increase in fraud, regulatory non-compliance and illegal activities related thereto and in connection therewith.

31.   On January 28, 2018, Defendant Cheng sent an unsolicited written message to Mr. Polites through LinkedIn, an online professional networking platform, in which Defendant Cheng introduced himself and the Alchemy project and expressed his desire to retain Mr. Polites' blockchain marketing and PR expertise.

32.   Defendant Cheng and Mr. Polites first physically met in Union Square on February 3, 2018. During the meeting, Defendant Cheng explained to Mr. Polites the Alchemy project concept and what stage of development the Alchemy project was in. Moreover, Defendant Cheng asked Mr. Polites for, and Mr. Polites provided, detailed advice on blockchain, ICOs and marketing. At this time, Defendants had not yet finalized their "whitepaper" - a written document, similar to a pitch deck or private placement memorandum, that outlines a blockchain project's proposed solution to a particular problem and specific details of the blockchain software, architecture, and applications. Defendant Cheng verbally agreed to compensate Mr. Polites 1% of the total funds raised from the Alchemy ICO (i.e. Alchemy Coin Token sale) in exchange for Mr. Polites' advice on blockchain strategy as well as marketing advisory and other consulting services.

33.   Mr. Polites continued to communicate directly with Defendant Cheng following their February 3, 2018 meeting. Mr. Polites began advising Alchemy on February 4, 2018 when Mr. Polites provided Alchemy project-related marketing feedback to Defendant Cheng upon receiving an email from Defendant Cheng requesting Mr. Polites' advice therefor.

34.   Mr. Polites and Alchemy entered into a definitive written advisory agreement on February 6, 2018, which was backdated to February 2, 2018. Pursuant to the Advisory Agreement, Alchemy promised to pay Mr. Polites 1% of the total fundraising amount in exchange for Mr.

Polites' mentorship, advisory, and consulting services in connection with Alchemy's project. (*See* Advisory Agreement, attached hereto as <u>Exhibit A</u>).

35.   On March 8, 2018, Defendant Cheng sent a written message to Mr. Polites that an investor had committed to buying Alchemy Coin Tokens and that Defendant Cheng expected to receive a wire transfer from such investor on the following Monday.

36.   On March 13, 2018, Defendant Cheng reported that Alchemy had secured $30 million in funding from Staxx Solution Capital ("Staxx Capital"), a Dubai-based investor. Defendant Cheng provided a financial statement confirming such receipt. (*See* Proof of Transfer, attached hereto as <u>Exhibit B</u>).

37.   On March 15, 2018, Defendant Cheng confirmed on Telegram – a popular messaging platform – that Alchemy had received three out of four installments of the total $30 million USD committed into their bank account.

38.   In the months following Alchemy's purported receipt of $30 million USD in connection with the sale of Alchemy Coin Tokens to Staxx Capital, Mr. Polites continued to perform the services promised under the Advisory Agreement, including without limitation advising on Alchemy's blockchain project and ICO, evaluating service providers, facilitating online community engagement, guiding Defendants in growing the audience of Alchemy's Telegram channel, arranging speaking engagements and panel placements featuring Individual Defendants, introducing Individual Defendants to necessary third parties (e.g. investors, advisors, and service providers), placing press articles about Alchemy through leading online publications (e.g. Hacker Noon, Yahoo News), and otherwise leveraging Mr. Polites' experience, reputation and goodwill in the blockchain space in furtherance of the Advisory Agreement.

39.   Mr. Polites incurred substantial costs in performing the foregoing services, including without limitation incurring over $5000 USD in placing press articles in major publications. Defendants have flatly refused to reimburse Mr. Polites for any costs incurred in performing Mr. Polites' obligations to Defendants pursuant to the Advisory Agreement.

40.   As a direct result of Mr. Polites' performance of the services promised under the Advisory Agreement, together with Defendants' use of Mr. Polites' reputation and goodwill for marketing purposes, Defendant Cheng recruited several leading advisors to serve on behalf of Alchemy, including highly esteemed Singapore-based ICO advisor, George Han.

41.   During the month of March, Mr. Polites physically met with Defendant Cheng multiple times at Defendant Cheng's apartment building in New York City. Mr. Polites also began corresponding with other members of Alchemy, including Defendants Fan and Bell, via conference calls.

42.   Defendants incorporated offshore entities in Hong Kong, specifically Alchemy Company, Limited on February 20, 2018 and AlchemyCoin Technology Limited on March 28, 2018. (*See* Alchemy Company Limited Registration, attached hereto as Exhibit C, and AlchemyCoin Technology Limited Registration, attached hereto as Exhibit D). On information and belief, Defendants formed the foregoing offshore entities in an apparent attempt to circumvent U.S. securities and tax laws, as well as their contractual obligations to Mr. Polites and other third parties, and to further shield Defendants from liability in connection with the sale of Alchemy Coin Tokens for fundraising purposes. As previously stated above, forming offshore entities is a popular method of limiting liability for a company seeking to conduct an ICO, especially in light of regulatory uncertainty in the U.S. regarding treatment of ICOs under various bodies of law, including without limitation federal and state securities, tax, and banking laws.

43.   On April 30, 2018, Defendant Cheng informed Mr. Polites that Defendant Cheng and Defendant Fan were involved in a dispute between themselves and that the $30 million received from Staxx Capital was frozen in Alchemy's Hong Kong bank account.

44.   Shortly following Defendant Cheng's April 30, 2018 communication with Mr. Polites, on information and belief, Defendant Cheng began experiencing financial issues. As a result, Defendant Cheng increased Alchemy's fundraising efforts in an attempt to bring in new investors to secure even more capital, beyond the $30 million already received.

45.   During the Summer of 2018, Alchemy began conducting "token swaps" to exchange tokens with other projects in an effort to share risk and gain liquidity. A token swap is an agreement between two companies whereby one party agrees to exchange their tokens for the other party's token at a predetermined price. Alchemy's token swaps were highly publicized in several blog posts throughout the Summer of 2018. (*See* Alchemy Token Swap Press Releases, attached hereto as Exhibit E).

46.   Although Alchemy Coin Tokens were not yet liquid and could not be resold by purchasers thereof, Individual Defendants artificially inflated, and misrepresented to the public, the total amount of funds raised by including the purported value of each token swap agreement, largely in hopes that such misrepresentation would garner public confidence, increase the attractiveness of the Alchemy Coin Tokens, and entice new investors to provide additional funding towards the Alchemy Lending platform.

47.   On or around September 2018, according to Defendant Cheng's public LinkedIn profile, Alchemy concluded their ICO and closed a purported $46.2 million USD in funding.

48.   On October 27, 2018, Mr. Polites and Defendant Cheng spoke on the phone to discuss Alchemy's payment of the Advisory Agreement. During this conversation, Mr. Polites and Defendant Cheng verbally agreed to negotiate several alternative payment options in lieu of the agreed upon percentage-based amount under the Advisory Agreement.

49.   On October 29, 2018, Defendant Cheng confirmed in writing that he would soon review Mr. Polites' proposed alternative payment options.

50.   On November 6, 2018, Mr. Polites inquired further on the status of Defendant Cheng's review of Mr. Polites' proposed alternative payment options. Defendant Cheng responded that he was on vacation in Texas for the remainder of November. Defendant Cheng also stated that his sole focus was on preparing for Thanksgiving and building the Alchemy Lending platform.

51.   In October and November of 2018, disputes arose between several Alchemy investors and Alchemy (and Alchemy's management team). On November 28, 2018, Mr. Polites once again reached out to Defendant Cheng – this time in an effort to assist with an investor's attempt to

recoup money invested in Alchemy from Defendant Cheng and Alchemy. In response, Defendant Cheng made the following statements: "I act on behalf the best interests of the company. Those people are 100% not getting my money becuz [sic] of their weak or lack of performances. They can do whatever they want and we are ready for that. I am also ready to face them in court but they are not going to win anyway, so I guess all they can do is talking shit around;" "Having money does not mean throwing money for people not performing or charging unreasonably; and "I am not paying his ransom."

52.   On November 30, 2018, Mr. Polites and Defendant Cheng spoke on the phone and discussed a potential settlement of the amount owed to Mr. Polites under the Advisory Agreement. During the call and shortly thereafter, Defendant Cheng requested that Mr. Polites provide invoices for the services provided by Mr. Polites along with a new written agreement that broke down the compensation owed to Mr. Polites into monthly installments, instead of one lump sum.

53.   On December 3, 2018, Mr. Polites emailed Defendant Cheng the aforementioned deliverables and Defendant Cheng acknowledged receipt thereof.

54.   On December 10, 2018, Mr. Polites sent a text message to Defendant Cheng to inquire on the status of the new agreement. Defendant Cheng sent a text response stating: "Yes I am waiting on the feedbacks [sic] from my new CFO since I am in California this week."

55.   On December 18, 2018, Mr. Polites inquired again about the status of his compensation via text message to Defendant Cheng. Defendant Cheng refused to respond to Mr. Polites' inquiry.

56.   On December 27, 2018, Defendant Cheng emailed Mr. Polites stating that Alchemy's board of directors and company members would not pay Mr. Polites any portion of the compensation promised under the Advisory Agreement. On information and belief, Alchemy's board of directors and company members are composed of only Individual Defendants and their affiliates.

57.   On January 17, 2019, Mr. Polites emailed all Individual Defendants demanding payment of the amount due under the Advisory Agreement and stating Mr. Polites' intention to pursue legal action if payment was not forthcoming. Jahril Tafari Bell ("Mr. Bell"), a co-founder

of Alchemy at the time but whose relationship with Alchemy has since been terminated by Individual Defendants, responded to Mr. Polites and requested to speak with Mr. Polites on the phone, wherein Mr. Bell and Mr. Polites discussed the Advisory Agreement. Following the phone call between Mr. Polites and Mr. Bell, Mr. Bell acted as the liaison between Mr. Polites, Alchemy, and the other Individual Defendants to assist Mr. Polites in facilitating a prompt and amicable solution to the dispute.

58.    On January 22, 2019, Mr. Polites spoke with Defendant Cheng to discuss other alternative payments options. Mr. Polites and Defendant Cheng verbally agreed to new payment terms. Defendant Cheng requested that Mr. Polites provide revised proposals to settle the amounts owed to Mr. Polites under the Advisory Agreement and offered to pay Mr. Polites at or around $40,000 per month, which according to Defendant Cheng, was the market at rate of compensation that other reputable blockchain consultants were being paid at the time. Mr. Polites subsequently proposed an alternative payment option to Individual Defendants whereby Mr. Polites would continue providing Mr. Polites' advisory services to Alchemy in exchange for a monthly retainer, which would allow Mr. Polites to recoup the outstanding amount owed by Alchemy while continuing to add value to Alchemy at no additional cost. Mr. Polites emphasized his prior attempts to settle at a discounted rate in lieu of the full $462,000 owed by Alchemy to Mr. Polites (calculated as 1% of the $46.2 million total funds raised that Defendant Cheng publicly published via his LinkedIn profile).

59.    On February 7, 2019, Cheng responded to the Mr. Polites' proposal via email with the following message: "Jared, After numerous discussions with both our board members and C level executives, no members has agreed to pay any sum outside of reimbursement you paid the PR. Your agreement is with Alchemy Finance Inc, not Alchemy Coin . . . All members do agree to work with you in a contractual basis whether it be to introduce companies to us and you receive a referral fee or introducing investors. This is the only best solution we can provide for you now. If you want to take any further legal action we are happy to explain in court with more details. Have a great evening."

60.    Throughout February to early March of 2019, Mr. Bell continued to assist Mr. Polites in Mr. Polites' compensation collection efforts.

61.    On March 5, 2019, at Mr. Bell's urging and behest, Defendant Cheng and Mr. Polites verbally discussed via phone, and once again agreed to, payment of a discounted amount in full satisfaction of the compensation owed to Mr. Polites under the Advisory Agreement.

62.    On March 8, 2019 Mr. Polites, Mr. Bell and Defendant Cheng further confirmed the settlement details in writing via email.

63.    Alchemy received a final written draft of the definitive settlement agreement on March 15, 2019, incorporating final discussions regarding the amount, number of payments, among other definitive terms.

64.    Individual Defendants refused to respond after receiving the definitive settlement agreement. Individual Defendants have since blocked Mr. Polites from communicating with them on all online communications platforms, including without limitation LinkedIn, WhatsApp, and Telegram.

65.    Alchemy has demonstrated a clear pattern of fraud and bad faith, and have also refused to compensate several other advisors and consultants previously retained. Alchemy has since also terminated Mr. Bell due to Mr. Bell's cooperation with and provision of assistance to Mr. Polites. Moreover, throughout the course of Mr. Polites' performance of the Advisory Agreement, on multiple occasions, Defendant Cheng bragged to Mr. Polites about intentionally failing to pay U.S. taxes, conducting his business through an F1 student visa, despite no longer being enrolled at any U.S. academic institution, and considering arrangement of an unlawful sham marriage with a U.S. citizen to permanently remain in the U.S. The foregoing actions highlight the Defendants' concurrent knowledge, intentional and furtherance of illegal activities in their substantial and intentional contravention of various bodies of U.S. law, including without limitation rules and regulations promulgated under various federal securities, tax, and immigration law, as well as state contract and tort law.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### (All Defendants)

66.   All of the above allegations are incorporated herein by reference.

67.   Defendants offered to pay Mr. Polites an amount equal to 1% of the total funds raised by Alchemy.

68.   Mr. Polites accepted, and relied on, their offer when he provided marketing, public relations, and investor relations services to Alchemy.

69.   Mr. Polites performed all of his obligations under the contract.

70.   Defendants breached the contract when Defendants secured at least $30 million in funding and refused to pay Mr. Polites.

71.   As a result, Mr. Polites was injured in an amount exceeding $75,000.

### COUNT II
### Fraudulent Misrepresentation
### (All Defendants)

72.   All of the above allegations are incorporated herein by reference.

73.   Defendants made false representation of material fact regarding the amount of funds actually raised via the Alchemy ICO, and the entity actually conducting the ICO and receiving funds therefrom, among others.

74.   Defendants knew the statements were false when making such statements, and knew that they had no intent to perform their obligations under the Advisory Agreement.

75.   Defendants intended for Mr. Polites to rely on the false statements.

76.   Mr. Polites justifiably relied on the false statements when Mr. Polites performed all of his obligations under the Advisory Agreement.

77.   Mr. Polites suffered damages in an amount exceeding $75,000 due to his reliance on Defendants' false statements and Defendants' refusal to satisfy any of their payment obligations to Mr. Polites.

## COUNT III
### Negligent Misrepresentation
### (All Defendants)

78.   All of the above allegations are incorporated herein by reference.

79.   Defendants consistently provided false information for the purpose of manipulating Mr. Polites' performance of his obligations under the Advisory Agreement.

80.   Defendants falsely represented that Defendants would compensate Mr. Polites in the amount of 1% of total funds raised by Defendants in exchange for Mr. Polites' efforts at furthering the Defendants' blockchain project through his marketing and PR advisory services. In addition, Defendants falsely represented that Alchemy Finance, Inc. would be conducting the ICO and receiving the funds therefrom.

81.   Defendants failed to exercise reasonable care or competence when they relayed inaccurate information to Mr. Polites regarding Defendants' blockchain project and ICO.

82.   Mr. Polites was injured in an amount exceeding $75,000 as a result of his justifiable reliance on Defendants' negligent misrepresentations.

## COUNT IV
### Fraudulent Concealment
### (All Defendants)

83.   All of the above allegations are incorporated herein by reference.

84.   Defendants had a duty to disclose material information to Mr. Polites when they made partial disclosures that conveyed a false impression regarding the entity that would actually conduct the ICO and receive funds therefrom.

85.   Defendants had a duty to disclose material information to Mr. Polites when they completed the ICO after publicly representing that they secured $46.2 million in funding upon conclusion of the ICO.

86.   Defendants intentionally concealed material information that was otherwise unknown to Mr. Polites and intended to deceive Mr. Polites by concealing such information.

87.   Mr. Polites acted in justifiable reliance on the defendant's concealment when he performed his obligations under the Advisory Agreement.

15

88.   Mr. Polites suffered damages in an amount exceeding $75,000 as a result of his justifiable reliance on Defendants' concealment.

**COUNT V**
**Unjust Enrichment**
**(All Defendants)**

89.   All of the above allegations are incorporated herein by reference.

90.   Mr. Polites conferred a benefit upon Defendants when he provided marketing, PR, and investor relations services to Defendants under the Advisory Agreement.

91.   Defendants knowingly received this benefit.

92.   Defendants retained the benefit – the fruits of Mr. Polites' labor – and continue to enjoy the fruits of his labor to this day at Mr. Polites' expense.

93.   Defendants are liable to Mr. Polites in an amount to be proven at trial which is in excess of $75,000.

**COUNT VI**
**Breach of Implied Duty of Good Faith and Fair Dealing**
**(All Defendants)**

94.   All of the above allegations are incorporated herein by reference.

95.   The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.

96.   Defendants invited Mr. Polites to serve as an advisor for their blockchain project in exchange for 1% of the total funds raised through their ICO.

97.   Defendants used Alchemy Finance, Inc. as a shell company to contract with Mr. Polites.

98.   Defendants breached the covenant of good faith and fair dealing when Defendants conducted their ICO and received at least $30 million through one of Alchemy's newly created offshore entities, and thereafter refused to pay Mr. Polites because this offshore Hong Kong-based entity was not a party to the Advisory Agreement.

99.   Defendants were well aware of Mr. Polites' reasonable expectation of payment for the advisory services and expertise that he provided.

100. Mr. Polites was injured in an amount exceeding $75,000 as a result of Defendants' breach of the covenant of good faith and fair dealing.

## COUNT VII
### RICO Section 1962(c)
### (All Defendants)

101. All of the above allegations are incorporated herein by reference.

102. Alchemy is an enterprise engaged in and whose activities affect interstate commerce. Defendants are employed by or associated with the enterprise.

103. Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Mr. Polites. Defendants repeatedly committed mail and wire fraud in violation of both 18 U.S.C. § 1341 and 18 U.S.C. § 1343 among other RICO predicates in further of their scheme. This plan was executed through meetings using physical as well as electronic mail, internet-based voice over phone calls, and fraudulent bank/wire transactions.

104. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts, specifically related (but not limited to) the following knowing and intentional unlawful acts:

    a. Using Mr. Polites as a pawn in a series of transactions designed to defraud investors, service providers and the general public;

    b. Multiple incidences of wire and mail fraud – including every single instance of the above referenced token swaps as well as the communications misleading the Mr. Polites and other victims of Defendants' unlawful activities;

    c. Creating multiple offshore entities with similar names – of which all Defendants are directors – to deflect liability as well as funnel money outside of regulatory reach; and

    d. Operating an unlicensed, unregistered, and unregulated online consumer lending platform within the U.S.

105. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C.A. § 1961(5).

106. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C.A. § 1962(c).

107. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C.A. § 1962(c), Mr. Polites has been injured in his business and property in that the compensation exceeding $75,000 owed by Defendants to Mr. Polites pursuant to the Advisory Agreement has been converted for use in and to further the Defendants' scheme.

**COUNT VIII**
**RICO Section 1962(a)**
**(All Defendants)**

108. All of the above allegations are incorporated herein by reference.

109. Alchemy is an enterprise engaged in and whose activities affect interstate commerce.

110. Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Defendants have used the fraudulently obtained gains referenced above from Mr. Polites as well as other victims to create further entities, reinvest their money, and continue their illicit activities. Investing the money into transactions such as token swaps is an effective way of using the money to mislead the public, create a false sense of confidence, and induce further investment in furtherance of the scheme.

111. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C.A. § 1961(5).

112. As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C.A. § 1962(a), Mr. Polites has been injured in his business and property in that in addition to the compensation exceeding $75,000 owed by Defendants to Mr. Polites pursuant to the Advisory Agreement that Defendants have converted and used in their scheme, the behavior above has damaged Mr. Polites' reputation in the industry and with the investors and entities to whom Mr. Polites introduced Defendants.

## COUNT IX
### RICO Section 1962(b)
**(All Defendants)**

113.  All of the above allegations are incorporated herein by reference.

114.  Alchemy is an enterprise engaged in and whose activities affect interstate commerce.

115.  Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Without the racketeering activities involving at the least mail and wire fraud, Defendants would not have been able to create and operate the entities needed as well as continue to maintain their positions of leadership. As questions arose, Defendants used their ill-gotten gains to maintain their positions of leadership through a pattern of misrepresentation and intimidation to investors, employees, service providers, other third parties, and the public at large.

116.  The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C.A. § 1961(5).

117.  Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C.A. § 1962(b).

118.  28. As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C.A. § 1962(b), Mr. Polites has been injured in his business and property in that, but for Defendants' racketeering activities allowing them to maintain interests and control in such entities, Mr. Polites otherwise would have been able to capitalize on his successful efforts by having the ability to continue using his reputation, goodwill, and associated contacts on similar future projects, in addition to otherwise collecting the compensation exceeding $75,000 owed by Defendants to Mr. Polites pursuant to the Advisory Agreement.

## COUNT X
### RICO 1962(d)
**(All Defendants)**

119.  All of the above allegations are incorporated herein by reference.

120.  As set forth above, Defendants agreed and conspired to violate 18 U.S.C.A. § 1962(a) (b) and (c). Specifically, Defendants acted in concert when they made a series of decisions.

Through their own admissions in electronic mail and other communications to Mr. Polites (and other individuals) as well as filing documents bearing their signatures, Defendants consulted each other before and throughout the conspiracy to plan and execute many overt acts in pursuit of their common illicit goals.

121. Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962(a), (b) and (c), in violation of 18 U.S.C.A. § 1962(d).

122. As direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C.A. § 1962(d), Mr. Polites has been injured in his business and property in that the compensation exceeding $75,000 owed by Defendants to Mr. Polites pursuant to the Advisory Agreement has been fraudulently withheld and converted for unlawful purposes.

<u>**COUNT XI**</u>
**Civil Conspiracy**
**(All Defendants)**

123. All of the above allegations are incorporated herein by reference.

124. Since on or around January of 2018, Defendants, agreed and combined to engage in a conspiracy in the following manner:

    a. Creating a scheme to induce Mr. Polites (and others) to signing a contract with an entity they planned to use as a shield for liability rather than the entity that would actually be raising funds;

    b. Engaging in a series of token swap transactions to artificially inflate the value of the Alchemy Coin Tokens sold and correlating amount of funds raised;

c.  Creating multiple entities (including offshore entities) to receive and hold funds in an effort to avoid payment to Mr. Polites and other third party service providers, avoid U.S. tax liability and continuing to this day to defraud investors, contracting third parties, and the public at large  in coordinated fashion as directors and officers of all Alchemy Entity Defendants; and

d.  Operating an illegal online lending platform from abroad and making such lending platform available for use by U.S. residents.

125. Defendants, and each and every one of them, agreed and combined to engage in a civil conspiracy to commit the unlawful acts as described herein.

126. Defendants, and each and every one of them, combined to engage in a civil conspiracy of which the principal element was to inflict wrongs against and injury on Mr. Polites and the public at large as described in this Complaint.

127. Defendants, and each and every one of them, combined to engage in a civil conspiracy that was furthered by overt acts.

128. Defendants, and each and every one of them, understood, accepted, or explicitly or implicitly agreed to the general objectives of their scheme to inflict the wrongs and injuries on the Mr. Polites as described in this Complaint.

129. Defendants, and each and every one of them, acquired, possessed, and maintained a general knowledge of the conspiracy's objectives to inflict wrongs against and injury on Mr. Polites as described in this Complaint.

130. Defendants, and each and every one of them, combined to engage in a scheme that was intended to violate the law, and Defendants concealed and secreted such violations.

131. Defendants, and each and every one of them, combined to engage in a scheme which was intended to violate the rights of Mr. Polites.

132. Mr. Polites was injured in an amount exceeding $75,000 as a result of Defendants' conspiracy.

## COUNT XII
### Civil Aiding and Abetting
### (All Defendants)

133. All of the above allegations are incorporated herein by reference.

134. Defendants committed overt acts of fraud and other unlawful conduct as described above.

135. Defendants had knowledge of such fraud and other unlawful conduct.

136. Defendants substantially assisted the perpetration of such fraud and other unlawful conduct.

137. Mr. Polites was injured in an amount exceeding $75,000 as a result of Defendants' aiding and abetting of the commercial misconduct delineated above.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Polites prays for the following relief:

A.   On Count I, awarding damages in favor of Mr. Polites for Defendants' breach of the Advisory Agreement, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

B.   On Count II, awarding damages in favor of Mr. Polites for Defendants' fraudulent misrepresentation, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

C.   On Count III, awarding damages in favor of Mr. Polites for Defendants' negligent misrepresentation, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

D.   On Count IV, awarding damages in favor of Mr. Polites for Defendants' fraudulent concealment, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

E.   On Count V, awarding damages in favor of Mr. Polites for Defendants' unjust enrichment, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

F.  On Count VI, awarding damages in favor of Mr. Polites for Defendants' breach of the implied duty of good faith and fair dealing, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

G.  On Count VII, awarding damages in favor of Mr. Polites for Defendants' violation of RICO Section 1962(c), in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

H.  On Count VIII, awarding damages in favor of Mr. Polites for Defendants' violation of RICO Section 1962(a), in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

I.  On Count IX, awarding damages in favor of Mr. Polites for Defendants' violation of RICO Section 1962(b), in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

J.  On Count X, awarding damages in favor of Mr. Polites for Defendants' violation of RICO Section 1962(d), in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

K.  On Count XI, awarding damages in favor of Mr. Polites for Defendants' civil conspiracy, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

L.  On Count XII, awarding damages in favor of Mr. Polites for Defendants' civil aiding and abetting, in an amount to be determined at trial, but in no event less than $75,000, plus interest, attorneys' fees and costs;

M.  Granting Mr. Polites such other and further relief as the Court deems just and proper.

**Mr. Polites demands a jury trial on all issues so triable.**

Respectfully submitted,

By: _____          Dated: April 30, 2019

Theodore Christian Sieving
(*Pro Hac Vice* Admission Pending)
California Bar No. 270827
XNOVO LEGAL, P.C.
235 E Broadway #800
Long Beach, CA  90802
(734) 730-6831
ted@xnovo.legal

*Attorney for Plaintiff Jared Polites*